UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD HEARY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 16-131 |
| | ) | Chief Magistrate Judge Maureen P. Kelly |
| v. | ) | |
| | ) | ECF Nos. 58, 76 |
| LOUIS S. FOLINO, CORRECT CARE SOLUTIONS, NEDRA GREGO, MS. VIHLIDAL, and DOCTOR JIN, | ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

**Chief United States Magistrate Judge Maureen P. Kelly**

**I.    INTRODUCTION**

**A.  Relevant Procedural History**

Richard Heary ("Plaintiff"), a prisoner incarcerated at the State Correctional Institution at Greene, Pennsylvania ("SCI-Greene"), filed this *pro se* civil rights action on February 2, 2016, alleging that various prison officials and medical providers were deliberately indifferent to his medical needs, in violation of his rights provided by the Eighth Amendment to the United States Constitution. ECF No. 8. This Court subsequently granted Motions to Dismiss filed on behalf of all Defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. The Court granted Plaintiff leave to file an Amended Complaint as to Defendant Dr. Jin, to the extent that Plaintiff could allege additional specific facts to make out an Eighth Amendment claim. ECF Nos. 15, 28, 38.

1

On December 20, 2016, Plaintiff filed his Amended Complaint alleging that Dr. Jin failed to treat persistent severe pain and contractures of the fingers of his left hand, and that Dr. Jin suggested that as a prisoner serving a life sentence, Plaintiff was not entitled to outside medical treatment, but could receive only ibuprofen for pain. ECF No. 39 ¶ 8-10. Plaintiff alleged additional claims for "negligence and malpractice" and sought injunctive relief. ECF No. 39 at 5-6. Dr. Jin responded with a Motion to Dismiss, ECF No. 40, which this Court granted in part and denied in part. In particular, the Court ordered stricken Plaintiff's claims of negligence and malpractice against Dr. Jin, as both claims were not included in Plaintiff's original Complaint and, as new claims, were not contemplated by this Court's Order allowing the filing of an amended complaint.[1] However, the Court determined that Plaintiff's Amended Complaint alleged sufficient facts to state a claim for deliberate indifference to his medical needs in violation of the Eighth Amendment. ECF No. 47.

Pursuant to the Court's Case Management Order, ECF No. 51, discovery is now closed and the parties have filed the pending cross Motions for Summary Judgment. ECF Nos. 58, 76. The parties have filed their respective briefs in support and in opposition to the pending motions, ECF Nos. 59, 60, 74, 75, 77, 78, 80, and 81. On March 16, 2018, the Court heard oral argument on the Motions for Summary Judgment. The Court asked Plaintiff and counsel for Dr. Jin to address a number of issues, including the failure to refer Plaintiff to a hand specialist and the statute of limitations. ECF No. 84. As such, the Motions for Summary Judgment are now ripe for consideration.[2]

---

[1] In the absence of the timely filing of a Certificate of Merit in compliance with Pennsylvania law, Plaintiff's state law negligence and malpractice claims were otherwise barred. See, Pa. R. Civ. P. 1042.3(a).

[2] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. ECF Nos. 22, 23, 27.

## B. Relevant Factual History

The evidence adduced to date establishes that in December 2011, Plaintiff began seeking medical treatment at SCI-Greene for complaints of a painful nodule on his left palm. Dr. Jin diagnosed the nodule as a palmar fibroma, and in May 2012, provided a local steroid injection for possible relief from pain. ECF 77-1 at 80, 138, 250. On June 7, 2012, Plaintiff was seen for follow-up, and Dr. Jin noted a tender nodule of the left palmar fascia in the area of the fifth metacarpal. Dr. Jin suggested excising the nodule, which was scheduled and completed with success two weeks later. This nodule was assessed as sequelae to Dupuytren's contracture.[3] ECF 77-1 at 79-80, 136-137, 258.

Over the course of the next nine months, Plaintiff was seen by Dr. Jin or other medical staff for continuing and worsening pain and contractures to his left little finger and hand. Dr. Jin prescribed various doses of Motrin, Mobic and Naprosyn and provided a steroid injection to attempt to treat Plaintiff's pain. On September 24, 2013, Plaintiff submitted an initial grievance complaining that he most recently requested treatment on September 17, 2013, for "radiating, shooting, throbbing pain that is unbearably advancing at a rapid rate." ECF 29-1 at 1-2. Plaintiff reported continued reduction of his range of motion and requested a consultation with a specialist. Plaintiff's grievance was denied and this disposition was upheld at each level of appeal. A Final Appeal Decision by the Secretary's Office of Inmate Grievances and Appeals affirmed the denial on March 6, 2014, based on a finding that Plaintiff's medical care was "reasonable and appropriate." ECF No. 29-1 at 10.

---

[3] Dupuytren's contracture is a thickening of the skin over the palm that can affect the mobility of the fingers. ECF No. 29 at 2 n.1.

In January 2014, after prescribing Naprosyn, Plaintiff was told to follow-up in six months. Plaintiff returned in July 2014, and reported continued painful flexion contracture. Dr. Jin photographed Plaintiff's finger and forwarded a request to the Regional Medical Director for consultation with a hard surgeon. ECF 77-1 at 28-29, 76, 130 – 34. The consultation request does not indicate the identity of the reviewing physician, and contains only Dr. Jin's signature, reflecting that on July 14, 2014, it was determined that Plaintiff was to complete an Alternative Treatment Plan ("PT etc").[4] Thereafter, Plaintiff attempted physical therapy, to no avail. The therapist indicated that as of August 14, 2014, Plaintiff suffered "severe left fifth digit contracture[, with] a dime-sized nodule" in the fifth digit metacarophalangeal area. Two weeks later, the therapist reported his assessment of no change in Plaintiff's severe contracture, with the therapist's notation that Plaintiff "may benefit from hand surgeon consult" because he was "not [a] good candidate for PT [at] this time." ECF No. 77-1 at 129 - 30.

Plaintiff was next seen by medical personnel on December 30, 2014, complaining of pain that at times went on for twenty minutes without relief or exacerbation. He rated his pain a 7 ½ out of 10 and the provider scheduled a chart review with Dr. Jin. ECF 77-1 at 75, 129. The provider reviewed Plaintiff's case with Dr. Jin, and progress notes indicate that Dr. Jin reviewed Plaintiff's chart again the following month and noted that while physical therapy was recommended as an alternative to surgery after the initial consult, he "didn't expect any help." Id. at 128.

Dr. Jin next examined Plaintiff on March 3, 2015. ECF No. 77-1 at 75, 128. By that time, Plaintiff suffered "a complete contracture with tenderness to the volar aspect." ECF No.

---

[4] Dr. Jin states that the request for consultation was submitted to Wexford Health Sources, which rendered its decision of July 17, 2014. ECF No. 29, 130. However, only Dr. Jin's name and signature appear on the consultation record.

77-1 at 71, 128. On March 24, 2015, Dr. Jin again examined Plaintiff and noted that at this time, Plaintiff was still in pain, and suffering a complete flexion contracture with pain at the site of the nodule. Dr. Jin determined that Plaintiff required surgical correction, and prepared a Consultation Record seeking an evaluation with a hand surgeon. ECF No. 77-1 at 27, 127. The Consultation Record does not indicate the identity of the consulting physician, but per Dr. Jin's notes, states that the request was declined. The record does not reflect the basis for the denial and Plaintiff's medical records do not indicate that Dr. Jin sought or initiated an alternative treatment plan. Id.

Over the course of the next month, Plaintiff injured his left third and fourth fingers while playing basketball. Dr. Jin was notified, and ordered that Plaintiff's fingers be splinted and X-rayed the next day, and that he be treated with Motrin and ice. Plaintiff was seen the following day, and the X-rays revealed a dislocation of Plaintiff's left ring finger. On April 9, 2015, Plaintiff was seen by a medical provider for follow-up care to his hand, and it was noted that Plaintiff's ring finger was displaced. Dr. Jin was able to reduce the dislocation, and follow-up x-rays revealed good alignment of the joint and finger. On April 16, 2015, Plaintiff was seen by Dr. Jin for follow-up of his left ring finger. Dr. Jin buddy taped the ring finger to the contracted little finger and explained that the surgical consult for his Dupuytren's contracture had been denied for the second time. ECF No. 77-1 at 123. Again, there is nothing in the medical records to reflect the basis for the denial or that Dr. Jin took any further action to seek referral of Plaintiff to a hand surgeon or to develop an alternative treatment plan. Dr. Jin saw Plaintiff once more to follow-up on his dislocated finger, and recommended that Plaintiff continue active range of motion exercises. Id. Dr. Jin transferred out of SCI-Greene in May 2015, and has not seen Plaintiff again. ECF No. 78 at 15.

Over the course of the remainder of 2015 and 2016, Plaintiff continued to be treated sporadically for complaints of pain in his left hand and contracture of his little finger. In January 2016, Plaintiff was prescribed pain medication for spasms and enlarged flexor tendons in his left hand, but was generally noncompliant with medication. A third hand surgeon consultation was considered but rejected because Plaintiff was able to perform all of his activities of daily living. ECF 77-1 at 116. After additional complaints of worsening pain, leading to the inability to use his left hand, in August 2016, four years after the initial excision by Dr. Jin, Correct Care Solutions, LLC ("CCS") approved Plaintiff for a telemedicine consultation. The consultation occurred in November 2016 and after a second consultation in February 2017, Plaintiff was finally approved for surgery to release the contracture. Plaintiff's surgery was performed at Allegheny General Hospital in April 2017, and all complaints regarding his hand have resolved. Id. at 104-122, 169-173.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991). When determining whether there is a genuine issue of material fact, the

court must view the facts and all reasonable inferences in favor of the nonmoving party. EEOC v. Allstate Ins. Co., 778 F.3d 444, 448 (3d Cir. 2015).

In order to avoid summary judgment, a party must produce evidence to show the existence of every element essential to the case that it bears the burden of proving at trial; "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the nonmoving party fails to make a sufficient showing on any essential element of its case, the moving party is entitled to judgment as a matter of law. Id.

As indicated, each party has moved for the entry of judgment as a matter of law. However, the standards under which a court grants or denies each party summary judgment do not change by virtue of cross-motions being presented. Home for Crippled Children v. Prudential Insurance Co. of America, 590 F. Supp. 1490, 1495 (W.D. Pa. 1984). "On cross-motions for summary judgment, the law in our Circuit is clear—the Court considers each Motion on its own merits, tested against the standards of [Federal Rule of Civil Procedure 56]." U.S. Equal Employment Opportunity Commission v. Bob Evans Farms, LLC, 275 F. Supp.3d 635, 639 (W.D. Pa. 2017) (internal citations omitted).

### III. DISCUSSION

#### A. Eighth Amendment – Deliberate Indifference to Serious Medical Need

"The Eighth Amendment, through its prohibition on cruel and unusual punishment, prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" Pearson v. Prison Health Service, 850 F.3d 526, 534 (3d Cir. 2017), quoting Helling v. McKinney, 509 U.S. 25, 32 (1993). As this Court previously noted when ruling on Defendants' Motion to Dismiss, in the medical context, a constitutional violation under

the Eighth Amendment occurs when prison officials are deliberately indifferent to a prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 1993), citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993) (internal citations omitted). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977). Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").

Thus, in Pearson, the United States Court of Appeals for the Third Circuit reiterated that "a plaintiff can only proceed to trial when there is a genuine issue of fact regarding both the adequacy of medical care and the defendant's intent." Pearson, 850 F.3d at 535, citing Durmer v. O'Carroll, 991 F.2d at 69 n. 13. This requires evidence that a defendant is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and evidence that he drew the inference. Farmer v. Brennan, 511 U.S. 825, 835-37 (1994).

8

Deliberate indifference has been found in a variety of contexts, including an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d at 68, or "persistent conduct in the face of resultant pain and risk of permanent injury." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Here, neither party disputes that Plaintiff suffered a serious medical need. In fact, at oral argument, defense counsel conceded that Plaintiff was suffering from a serious medical need. The parties' differences lie in whether Dr. Jin was deliberately indifferent to Plaintiff's pain and the worsening condition of his hand. Plaintiff argues that the undisputed evidence establishes that Dr. Jin not only failed to provide adequate treatment to resolve the painful contracture of his little finger, but did so deliberately based on his opinion that prisoners were not entitled to quality medical care.

In support of his position, Plaintiff contends that for the period August 2013 through April 2015, Dr. Jin's treatment was limited to prescriptions for Motrin or Naproxen, which were insufficient for his persistent pain. ECF No. 59 at 2, 5. Plaintiff further alleges that despite his ongoing complaints of worsening pain, Dr. Jin explained that Plaintiff "shouldn't of come to prison and that this is all he could do for the plaintiff." ECF 58 at 4.

Plaintiff's medical records present a stark contrast to Plaintiff's version of events, but questions of fact remain concerning whether Dr. Jin's conduct in the face of continued complaints of pain and worsening contracture of Plaintiff's hand constitutes deliberate indifference, precluding the entry of summary judgment in this matter.

Beginning in August 2012, and throughout his tenure at SCI-Greene, Dr. Jin treated Plaintiff's condition, attempting varying modalities of conservative treatment and medications.

As Plaintiff's contractures and pain worsened, Dr. Jin states that he submitted two requests to consult with a hand surgeon, and acceded to an alternative treatment plan despite his recognition that it would be ineffective. Progress notes in Dr. Jin's handwriting indicate that an initial request for a consultation was denied in favor of an alternative treatment plan (physical therapy), and a second request was denied without an indicated reason. However, the progress notes do not reflect who Dr. Jin allegedly consulted with, who rendered the decision to delay or deny the consultation, or whether Dr. Jin took appropriate action to obtain approval for a consultation with a hand surgeon, in light of Plaintiff's significant chronic pain and hand contracture.

Further, in light of Plaintiff's statement during oral argument that Dr. Jin never discussed a possible referral with him, nor indicated that a request had been made and/or denied, it is apparent that an issue of fact is presented regarding whether a referral was made. This issue is particularly relevant to a determination of deliberate indifference on the part of Dr. Jin, given Plaintiff's continued complaints of pain, obvious hand contracture, and Dr. Jin's evident acknowledgment and conclusion that Plaintiff's serious medical condition was worsening. See, Farmer v. Brennan, 511 U.S. at 842 (a culpable state of mind can be found where an official acted *or failed to act* despite his knowledge of a substantial risk of serious harm.") (italics added).

In addition, based on the record before the Court, significant questions of material fact exist regarding the issues of Dr. Jin's alleged deliberate indifference to Plaintiff's serious medical need and course of treatment, including but not limited to: gaps in treatment with instructions to follow up after a span of several months at a time, failure to request an outside consultation immediately when it was apparent to Dr. Jin that Plaintiff was in pain and the proposed alternative treatment plan would not aid Plaintiff's condition, and Dr. Jin's failure to

10

seek or implement alternative treatment when the purported denial was received. Accordingly, given these issues of fact, neither party has established entitlement to the entry of judgment as a matter of law.

### a. Statute of Limitations

As an alternative basis for summary judgment, Dr. Jin contends that Plaintiff's claims, arising out of a surgical procedure in June 2012, are barred by the applicable statute of limitations. For Section 1983 actions based on conduct in Pennsylvania, the statute of limitations is two years from the date the claim accrued. See 42 Pa. Cons. Stat. § 5524(2); Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009). A claim accrues "when the plaintiff knew or should have known of the injury upon which [his] action is based." Kach, 589 F.3d at 634 (internal quotation marks omitted). Thus, Dr. Jin broadly argues that since Plaintiff's initial surgery to remove a node occurred in June 2012, and all of his claims are derivative of this medical procedure, Plaintiff's Complaint, not filed until February 2, 2016, is time barred.

This argument fails for a number of reasons. First, where a claim for deliberate indifference is measured by "persistent conduct in the face of resultant pain and risk of permanent injury," White, 897 F.2d at 109, each denial or failure to treat gives rise to a claim, and the statute of limitations runs anew. See, e.g., McCargo v. Camden County Jail, 693 F. App'x 164, 166 (3d Cir. 2017) (claims of deliberate indifference accrue while Plaintiff is enduring circumstances of denied medical treatment); and see, Houser v. Folino, 2014 WL 3696130, at *24 (W.D. Pa. July 23, 2014) (alleged deliberate indifference occurs each time treatment is refused or the deliberate indifference is otherwise made manifest)(citing Anders v. Bucks County, 2014 WL 1924114, *5, n. 9 (E.D. Pa. 2014) ("Because deliberate indifference is manifest when 'prison authorities deny reasonable requests for medical treatment ... and such

denial exposes the inmate to undue suffering or the threat of tangible residual injury,' the plaintiff has a cause of action for each time her requests for medical care were denied."); Robinson v. Superintendent Houtzdale SCI, 693 F. App'x 111, 117 (3d Cir. 2017) (the statute of limitations does not bar bringing a later claim based on a subsequent grievance when the challenged policy is ongoing).

Second, the United States Court of Appeals for the Third Circuit has unequivocally determined that the statutory two-year limitations period applicable to a prisoner's Section 1983 action is tolled while the prisoner exhausts the prisoner grievance process. Pearson, 775 F.3d at 602 (the mandatory exhaustion requirement set forth in the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), tolls the statute of limitations while a prisoner exhausts available administrative remedies).

In this instance, the evidence establishes that on September 24, 2013, Plaintiff filed a timely grievance concerning Dr. Jin's September 17, 2013, denial of treatment for persistent and debilitating pain. Pursuant to the PLRA, he was required exhaust available administrative remedies prior to filing suit. The record in this matter establishes that Plaintiff's grievance was not denied at the final level of review until March 6, 2014, which was 163 days after the date he filed his grievance. ECF No. 29-1 at 10. Plaintiff therefore was required to file his Complaint by September 24, 2015, plus the 163 days it took to exhaust his administrative remedies – *i.e.*, by March 5, 2016. Plaintiff submitted his Complaint to this Court on February 2, 2016, well within this time frame. Accordingly, the statute of limitations does not bar any claims related to the September 17, 2014, denial of treatment, as well as any manifestations of deliberate indifference which may have occurred as of that date through the filing of his Complaint. ECF No. 38 at 10 n.4.

The Court agrees, however, that any claim regarding the June 2012 excision procedure itself is time-barred. Hunt v. Pa. Dep't of Corrections, 289 F. App'x 507, 509 (3d Cir. 2008) ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discriminatory act starts a new clock for filing charges alleging that act."). In light of the foregoing, Dr. Jin's Motion for Summary Judgment based upon the statute of limitations is denied as to Plaintiff's claims arising out of Dr. Jin's alleged denial of treatment as of September 17, 2013, but is granted as to any claims arising out of earlier discrete acts regarding the treatment of Plaintiff's hand.

An appropriate order follows.

**ORDER**

AND NOW, this 22nd day of March 2018, for the reasons set forth in the accompanying Opinion, it is ordered that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 58, is denied.

2. Defendant Dr. Jin's Motion for Summary Judgment, ECF No. 76, is denied as to as to Plaintiff's claims regarding the denial of treatment as of September 17, 2013, but is granted as to any claims arising out of earlier discrete acts regarding the treatment of Plaintiff's hand.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc:	Richard Heary
	EE1131
	SCI Greene
	175 Progress Dr.
	Waynesburg, PA 15370

	All counsel of record via CM/ECF